# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| LOREN L. CASSELL, et al. | ) |
| | ) |
|     **Plaintiffs** | ) |
| | ) |
| v. | )   NO. 3:16-cv-02086 |
| | )   **CHIEF JUDGE CRENSHAW** |
| VANDERBILT UNIVERSITY, et al. | ) |
| | ) |
|     **Defendants** | ) |

## MEMORANDUM OPINION

Pending before the Court is Defendants' Motion to Dismiss the Amended Complaint (Doc. No. 42). For the reasons stated herein, Defendants' Motion to Dismiss will be **GRANTED in part and DENIED in part**.

## INTRODUCTION

This case is one of several cases filed in district courts across the country alleging that university retirement/pension plans have not been managed with loyalty or prudence, in violation of the Employee Retirement Income Security Act ("ERISA"). Plaintiffs, individually and on behalf of a purported class, brought this action under 29 U.S.C. § 1132(a)(2), for breach of fiduciary duties by Defendants with regard to the Vanderbilt University Retirement Plan and the Vanderbilt University New Faculty Plan (together, the "Plan"). The named Plaintiffs are participants in the Plan, and the Defendants are all alleged to be fiduciaries of the Plan.

The Plan is a defined contribution, individual account, employee benefit plan under ERISA, and it requires mandatory participation for eligible employees. (Doc. No. 38 at ¶¶ 9 and 11) The Amended Complaint alleges that, as of December 31, 2014, the Plan had 41,863 participants and $3.4 billion in assets. (Id. at ¶ 13) Plaintiffs assert that defined contribution plans allow employees

to contribute a percentage of their pre-tax earnings to the plan, with the employer often matching those contributions up to a certain percentage. Each participant has an individual account and directs her plan contributions into one or more investment options in a lineup chosen and assembled by the plan fiduciaries. (Id. at ¶ 37)[1]

Plaintiffs contend that Defendants violated ERISA by:

COUNT I - breaching their fiduciary duties by locking the Plan into a certain stock account (CREF) and into the services of a certain record-keeper (TIAA).

COUNT II - engaging in "prohibited transactions" by locking the Plan into the CREF Stock Account and the record-keeping services of TIAA.

COUNT III - breaching their fiduciary duties by paying unreasonable administrative fees.

COUNT IV - engaging in "prohibited transactions" by paying excessive administrative fees.

COUNT V - breaching their fiduciary duties by agreeing to unreasonable investment, management, and other fees and failing to monitor imprudent investments.

COUNT VI - engaging in "prohibited transactions" by paying fees to certain third parties in connection with the Plan's investment in those parties' investment options.

COUNT VII - failing to monitor other fiduciaries.

(Doc. No. 38) Defendants have moved to dismiss all of Plaintiffs' claims for failure to state claims upon which relief may be granted.

---

[1] There are two paragraphs 37 in the Amended Complaint. This cite is to ¶ 37 on page 17.

MOTIONS TO DISMISS

Although Plaintiffs have utterly failed to comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure by filing a 160-page Amended Complaint, for purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Id. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1950. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss. Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010).

ERISA

ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans. Chao v. Hall Holding Co., Inc., 285 F.3d 415, 425 (6th Cir. 2002); Pledger v. Reliance Trust Co., 240 F.Supp. 3d 1314, 1321 (N.D. Ga. 2017). The statute accomplishes this purpose by imposing fiduciary duties of prudence and loyalty on plan fiduciaries. Id. ERISA authorizes a plan participant to bring a civil suit against plan fiduciaries for breaches of the fiduciaries' duties of loyalty and prudence. Id. at 1322; 29 U.S.C. § 1132(a)(2).

(A)  Duty of Prudence

Under ERISA's duty of prudence, a fiduciary is required to discharge his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The test for determining whether a fiduciary has satisfied his duty of prudence is whether the fiduciary, at the time he engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment. Pfeil v. State Street Bank and Trust Co., 806 F.3d 377, 384 (6th Cir. 2015); Sacerdote v. New York Univ., 2017 WL 3701482 at * 4 (S.D. N.Y. Aug. 25, 2017). The Court must focus on whether the fiduciary engaged in a reasonable decision-making process, consistent with that of a prudent person acting in a like capacity. Pfeil, 806 F.3d at 384. Because the content of the duty of prudence turns on the circumstances prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific. Id. at 385.

(B)  Duty of Loyalty

Under ERISA's duty of loyalty, a fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and for the exclusive purpose of (1) providing benefits to participants and their beneficiaries and (2) defraying reasonable expenses of administering the plan. 29 U.S.C. § 1104(a)(1)(A).  To state a loyalty-based claim under ERISA, a plaintiff must do more than simply recast purported breaches of the duty of prudence as disloyal acts. Sacerdote, 2017 WL 3701482 at * 5. Rather, a plaintiff must allege facts that permit a plausible inference that the defendant engaged in transactions involving self-dealing or in transactions that

4

otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests. Id. In other words, to implicate the concept of loyalty, a plaintiff must allege plausible facts supporting an inference that a fiduciary acted *for the purpose of* providing benefits to itself or some third party. Id.

(C)  Prohibited Transactions

ERISA prohibits certain transactions between a plan and a "party in interest." 29 U.S.C. § 1106(a).[2] Included in those transactions are (1) the sale or exchange of any property between the plan and a party in interest; (2) the furnishing of goods, services or facilities between the plan and a party in interest; and (3) the transfer to, or use by or for the benefit of a party in interest, of any assets of the plan. 29 U.S.C. § 1106(a)(1)(A), (C) and (D). To state a claim under this statute, a plaintiff must allege that (1) the defendant is a fiduciary, (2) the defendant caused the plan to engage in one of the prohibited transactions, (3) the transaction was between the plan and a party-in-interest or involved plan assets, and (4) the defendant knew or should have known that the transaction was prohibited. Sacerdote, 2017 WL 3701482 at * 4.

FIDUCIARY DUTY OF LOYALTY

COUNT I

With regard to the fiduciary duty of loyalty, the Court finds that Plaintiffs have not alleged sufficient facts to show that Defendants engaged in transactions involving self-dealing or that otherwise involved or created a conflict between Defendants' fiduciary duties and personal interests. Even though Plaintiffs allege that various third parties benefitted from Defendants' alleged

---

[2] The term "party in interest" is defined to include any fiduciary and any person providing services to the plan. 29 U.S.C. § 1002(14).

5

mismanagement, the Amended Complaint fails to allege plausible facts supporting an inference that Defendants *acted for the purpose of* providing benefits to any third party or to themselves. Even if those third parties are considered "parties of interest," as defined in ERISA, in order to show that Defendants breached the fiduciary duty of loyalty, Plaintiffs must sufficiently allege that Defendants acted *for the purpose* of benefitting those third parties or themselves. When claims do not support an inference that the defendants' actions were for the purpose of providing benefits to themselves or someone else and simply had that incidental effect, loyalty claims should be dismissed. Sacerdote, 2017 WL 3701482 at * 6;[3] Cunningham v. Cornell Univ., 2017 WL 4358769 at * 4 (S.D. N.Y. Sept. 29, 2017).

Considering the Amended Complaint as a whole, the claims allege that Defendants followed an imprudent process, not that they acted disloyally. Plaintiffs' loyalty claims are characterizations that piggyback off their prudence claims. The facts alleged in the Amended Complaint assert that Defendants failed to manage and make decisions for the Plan in a prudent manner, not that Defendants engaged in self-dealing or acted for the purpose of benefitting a third party. (e.g., Doc. No. 38 at ¶¶ 104-151, 158-218, 225-231, 240-247, 255-267 and 275-280) Any facts that remotely relate to a duty of loyalty are insufficient to state a claim.[4] Accordingly, Plaintiffs' claims for breach of the duty of loyalty will be dismissed.

---

[3] An act which has the effect of furthering the interests of a third party is different from an act taken with that as its goal. Sacerdote, 2017 WL 3701482 at * 6.

[4] For example, Plaintiffs' allegation that, by "allowing" TIAA-CREF to dictate terms, Defendants favored the financial interests of TIAA-CREF (Doc. No. 38 at ¶ 227) is not a sufficient allegation that Defendants acted *for the purpose* of furthering TIAA-CREF's interests.

# FIDUCIARY DUTY OF PRUDENCE

COUNT I

Plaintiffs contend that Defendants breached their fiduciary duties of prudence by committing the Plan to an imprudent arrangement in which certain investments had to be included and could not be removed from the Plan, even if they were no longer prudent investments, and in which the Plan was prevented from using alternative record-keepers who could provide superior services at a lower cost. (Doc. No. 38 at ¶ 227) More specifically, Plaintiffs allege that Defendants agreed to an arrangement with TIAA-CREF [5] that mandated inclusion of TIAA's Traditional Annuity, locked the Plan into using TIAA as a record-keeper, and locked the Plan into including the CREF Stock and Money Market Accounts as Plan investment options. (Id.)

Plaintiffs claim this arrangement restricted the Plan's ability to obtain reasonable fees and to eliminate imprudent investments. (Doc. No. 38 at ¶ 227) Plaintiffs argue that Defendants breached their fiduciary duties by failing to independently assess the prudence of each investment option on an ongoing basis, by failing to act prudently and solely in the interest of the Plan's participants in deciding whether to maintain a record-keeping arrangement, and by failing to remove investments that were no longer prudent for the Plan. (Id. at ¶ 226)

Defendants argue this claim is barred by the six-year statute of limitations under ERISA, which provides that no action may be commenced with respect to a fiduciary's breach of any duty after the earlier of (1) six years after the date of the last action which constituted a part of the breach or violation or (2) three years after the earliest date on which the plaintiff had actual knowledge of

---

[5] The Amended Complaint identifies TIAA as the Teachers Insurance and Annuity Association of America and CREF as the College Retirement Equities Fund. (Doc. No. 38 at ¶ 75)

the breach or violation. 29 U.S.C. § 1113. To the extent Plaintiffs are challenging the initial commitment of the Plan to the TIAA-CREF "arrangement,"[6] that claim is time-barred, because that initial commitment occurred at the latest in 2009. (Doc. No. 44-6 (2009 Form 5500)) Accordingly, any claim based upon the initial commitment to this specific alleged "imprudent arrangement" is barred by the six-year statute of limitations.

In Response to Defendants' Motion, however, Plaintiffs argue that Defendants breached their fiduciary duty of prudence by *maintaining* this imprudent arrangement and failing to monitor and remove CREF stock. (Doc. No. 49 at 10) These claims overlap with Plaintiffs' claims for excessive fees, failure to monitor, and failure to remove imprudent investments. These claims will be discussed below in relation to Count V.

For these reasons, Plaintiffs' claims in Count I with regard to the Plan's initial commitment ("locking in") with TIAA-CREF are barred by the applicable statute of limitations and will be dismissed. The "maintaining" claim will be considered in connection with Plaintiffs' claims for excessive fees, failure to monitor, and failure to remove underperforming investments in Count V.

COUNT III

Plaintiffs aver that Defendants breached their fiduciary duty of prudence in several ways that resulted in the Plan's paying unreasonable administrative/record-keeping fees. (Doc. No. 38 at ¶¶ 241-244) The question whether it was imprudent to pay a particular amount of record-keeping fees generally involves questions of fact that cannot be resolved on a motion to dismiss. White v. Chevron, 2016 WL 4502808 at * 14 (N.D. Cal. Aug. 29, 2016).

---

[6] The Amended Complaint alleges that Defendants "committed" the Plan to an imprudent arrangement and "shackled" the Plan with that arrangement. (Doc. No. 38 at ¶¶ 227 and 228) This single act or transaction occurred outside the six-year statute of limitations.

8

(A) Failure to Solicit Competitive Bids

Plaintiffs contend that Defendants failed to solicit competitive bids from other record-keepers. To the extent Plaintiffs are alleging failure to solicit competitive bids for the initial TIAA-CREF arrangement, that claim is barred by the six-year statute of limitations, as explained above.

Defendants argue that ERISA does not mandate competitive bidding. Plaintiffs disagree and rely upon George v. Kraft Foods Global, Inc., 641 F.3d 786 (7th Cir. 2011), in which the court held that failure to solicit competitive bids on a periodic basis might be imprudent under certain circumstances. George, 641 F.3d at 798-99 (cited in White, 2016 WL 4502808 at * 14). George involved a district court's grant of summary judgment, and the court held that a trier of fact could reasonably conclude that the defendants did not satisfy their duties to ensure that the record-keeper's fees were reasonable where they failed to solicit competitive bids for more than fifteen years. George, 641 F.3d at 798.

In White, the plaintiffs alleged no facts suggesting that the fiduciaries could have obtained less expensive record-keeping services. White, 2016 WL 4502808 at * 15. Plaintiffs here have alleged specific facts to support their claim that, based on the Plan's features, the nature of the administrative services provided by the Plan's record-keepers, the Plan's participant level, and the record-keeping market, the outside limit of a reasonable record-keeping fee for the Plan would be a fixed $1.2 to $1.3 million (or $30 per participant). (Doc. No. 38 at ¶ 142) Plaintiffs also allege that the Plan actually paid at least $4.1 to $6 million per year ($100-$145 per participant) from 2010 to 2014, resulting in millions of dollars of excessive record-keeping fees. (Id. at ¶ 143) Plaintiffs further aver that a competitive bidding process for the Plan's record-keeping services would have produced a reasonable record-keeping fee for the Plan. (Id. at ¶ 149) Plaintiffs have made specific

9

factual allegations that a competitive bidding process would have benefitted the Plan. It is plausible from those facts to infer that Defendants could have obtained less expensive record-keeping services by soliciting competitive bids.

The Court finds that, for purposes of this Motion to Dismiss, Plaintiffs have sufficiently stated claims for breach of the fiduciary duty of prudence with regard to competitive bids for record-keeping services, except for those claims that are time-barred. The Amended Complaint sufficiently alleges that Defendants' failure to secure competitive bids under these circumstances was not consistent with that of a prudent man or woman acting in a like capacity. Whether is was actually imprudent involves questions of fact that the Court cannot consider at this stage of the litigation.

(B) Failure to Monitor Revenue Sharing

Plaintiffs also contend that Defendants breached their fiduciary duties of prudence by failing to adequately monitor revenue-sharing payments to the record-keepers to determine whether those payments were competitive or reasonable for the services provided to the Plan.

Plaintiffs assert that there are two primary methods for defined contribution plans to pay for record-keeping and administrative services. One method is direct payments from plan assets, wherein administrative services are offered in exchange for a flat annual fee based on the number of participants. (Doc. No. 38 at ¶¶ 55-56) The second method is through indirect "revenue sharing," in which the mutual fund pays the plan's record-keeper for its services. (Id. at ¶ 61) Defendants used the "revenue sharing" method, and Plaintiffs allege that method can lead to excessive fees if not properly monitored and capped. (Id. at ¶ 60) In addition, Plaintiffs claim that Defendants' failure to use the Plan's size to reduce fees or obtain sufficient rebates to the Plan was a breach of Defendants'

fiduciary duties. Plaintiffs allege that, as the Plan's assets grew, the record-keeper's compensation "skyrocketed," even though the services remained the same. (Doc. No. 49 at 18)

Defendants maintain that "revenue sharing" does not violate ERISA and is a common and accepted practice. Even though "revenue sharing" is a common industry practice, a fiduciary's failure to ensure that record-keepers charged appropriate fees and did not receive overpayments may be a violation of ERISA. Sacerdote, 2017 WL 3701482 at * 9; see also Henderson v. Emory Univ., 252 F. Supp.3d 1344, 1353 (N.D. Ga. 2017) (fiduciaries can be held accountable for failing to monitor and make sure that record-keepers charged appropriate fees and did not receive overpayments for their services).

Plaintiffs have sufficiently alleged that Defendants failed to adequately monitor and ensure that the Plan's record-keepers were being paid reasonable and not excessive fees. What is reasonable depends on the factual circumstances and on the services provided. This claim may be more appropriately addressed on summary judgment.

(C) Failure to Use a Single Record-Keeper

Plaintiffs argue that Defendants' use of four record-keepers violated their fiduciary duties of prudence. Plaintiffs aver that failure to consolidate the record-keeping services eliminated the Plan's ability to obtain the same services at a lower cost with a single record-keeper. (Doc. No. 38 at ¶ 244) Plaintiffs argue that instead of using the Plan's full participant base to obtain favorable pricing from a single record-keeper, Defendants fractured that leverage by needlessly maintaining *four* record-keepers, resulting in undue complexity and dramatically higher costs. (Doc. No. 49 at 18)

Defendants contend that there is no statute or regulation that prohibits fiduciaries from using multiple record-keepers. It is true that having a single record-keeper is not required as a matter of law, but Plaintiffs' allegation that a prudent fiduciary would have chosen fewer record-keepers and thus reduced costs for Plan participants is sufficient at this stage to state a claim. Sacerdote, 2017 WL 3701482 at * 9.

Defendants may ultimately defeat this claim of unreasonable administrative fees by showing that the fees were reasonable and not excessive, but the Court cannot engage in such factual speculation at this stage of the litigation. Plaintiffs have sufficiently alleged this claim for purposes of a motion to dismiss. For all of these reasons, Defendants' Motion to Dismiss Count III will be denied, except for the TIAA-CREF claims that are time-barred, as explained above.

COUNT V

Count V alleges breaches of fiduciary duties with regard to unreasonable investment and management fees and failure to monitor imprudent investments. (Doc. No. 38 at ¶¶ 254-267) Plaintiffs contend that Defendants breached their duties to monitor and to eliminate imprudent funds and excessive fee arrangements. This claim, alleging failure to control record-keeping fees and failure to monitor investments, is also included as a part of Count I, as indicated above.

Whether fees are unreasonable is an issue that should be taken up at summary judgment. Henderson, 252 F. Supp.3d at 1356. The reasonableness of fees is a defense and does not have to be pleaded by the Plaintiffs. Id. Moreover, at this stage of the proceedings, it is not Plaintiffs' burden to rule out every possible lawful explanation for the allegedly high fees charged in administering the Plan. Pledger, 240 F. Supp.3d at 1329.

Plaintiffs argue that Defendants not only failed to select prudent investment options with reasonable fees, but also failed to evaluate and monitor those investments and remove imprudent ones. Rather than independently assessing whether each option was a prudent choice for the Plan, Plaintiffs allege, Defendants simply followed the record-keeper's fund choices. Plaintiffs contend that Defendants, for years, retained investments with high expenses and poor performance relative to other investment options that were readily available. For example, Plaintiffs have alleged numerous, specific investments in the Plan that had five years of historical under-performance. (Doc. No. 38 at 107-114) Plaintiffs assert even more specific information concerning under-performance by TIAA and CREF. (Id. at 114-132)

Nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund, which might, of course, be plagued by other problems. Hecker v. Deere & Co., 556 F.3d 575, 586 (7th Cir. 2009). In addition, nothing in ERISA requires plan fiduciaries to include any particular mix of investment vehicles in their plan. Hecker, 556 F.3d at 586; In re Honda of America Mfg., Inc. ERISA Fees Litigation, 661 F. Supp.2d 861, 866 (S.D. Ohio 2009). Nonetheless, a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones. Stargel v. SunTrust Banks, Inc., 791 F.3d 1309, 1311 (11th Cir. 2015) (citing Tibble v. Edison Int'l, 135 S.Ct. 1823, 1828-29 (2015)).[7]

Having too many options does not hurt Plan participants. Instead, it provides them with greater opportunities to choose the investments they prefer. Henderson, 252 F. Supp.3d at 1350. ERISA encourages plan sponsors to allow more choices to participants and to allow participants to

---

[7] Tibble expressed no view, however, on the scope of the fiduciary duty. Tibble, 135 S.Ct. at 1829.

make their own choices. Loomis v. Exelon Corp., 658 F.3d 667, 673 (7th Cir. 2011). Here, there is no allegation of any specific harm to any specific person caused simply by the number of options available in the Plan. For these reasons, therefore, the claim that having too many options was a breach of the fiduciary duty of prudence will be dismissed. See Sweda v. Univ. of Pa., 2017 WL 4179752 at * 9 (E.D. Pa. Sept. 21, 2017).

The other allegations in this count, however, all require examination of particular circumstances, specific decisions and the context of those decisions. There are numerous factors that a prudent fiduciary must consider besides the amount of the fees. Fiduciaries have latitude to value investment features other than price (and, indeed, are required to do so), as recognized by the courts. White, 2016 WL 4502808 at * 10 (collecting cases). Accordingly, the appropriate inquiry on these claims involves issues of fact, which cannot be determined on a motion to dismiss. Again, these issues are better suited for summary judgment, when discovery is complete and the record is more developed.

Therefore, Defendants' Motion to Dismiss will be denied as to all parts of Count V except the allegation that Defendants offered too many options. At this stage of the litigation, accepting the allegations of the Amended Complaint as true, it would be inappropriate to grant Defendants' Motion to Dismiss on the rest of the Count V claims.

COUNT VII

The Amended Complaint also alleges that Defendants Vanderbilt University and Traci Nordberg and Barbara L. Carroll, each the Associate Vice-Chancellor for Human Resources, at different times, breached their fiduciary duties of prudence by failing to monitor the other fiduciaries. Plaintiffs contend that these three Defendants had responsibility for controlling and

managing the operation and administration of the Plan, including the selection of Plan service providers and investment options. (Doc. No. 38 at ¶ 276) Plaintiffs argue that, to the extent any of these three Defendants' fiduciary responsibilities were delegated to another fiduciary, these three Defendants breached their fiduciary monitoring duties in numerous ways, causing losses to the Plan.

Defendants contend that Count VII must be dismissed because it is derivative of Plaintiffs' other prudence claims and requires an antecedent breach to be viable. Defendants also argue that Count VII is devoid of facts about the fiduciary monitoring process, how it was deficient, or how it harmed Plaintiffs. Plaintiffs make only one response concerning this Count, in a footnote, where they state that because their other Counts state claims, Defendants' Motion to Dismiss Count VII fails. (Doc. No. 49 at p. 21, n.33)

The Court finds Plaintiffs' allegations in Count VII to be deficient for the same reasons stated in White, 2016 WL 4502808 at * 18-19. Plaintiffs allege only that "to the extent any of these Defendants' fiduciary responsibilities were delegated to another fiduciary," they had a duty to monitor those appointees. (Doc. No. 38 at ¶ 278) This allegation suggests that Plaintiffs do not know whether Defendants in fact delegated their fiduciary duties or to whom. (Id.) Moreover, Plaintiffs allege no facts showing what process of monitoring other fiduciaries existed or how it was deficient. (Id.) For these reasons, Count VII of the Amended Complaint will be dismissed for failure to state a claim upon which relief may be granted.

## PROHIBITED TRANSACTIONS

COUNT II

In Count II, Plaintiffs allege that Defendants engaged in a "prohibited transaction" by locking the Plan into the CREF Stock Account and the record-keeping services of TIAA. Plaintiffs

15

contend that, as a service provider (record-keeper) to the Plan, TIAA-CREF is a party in interest. Plaintiffs assert that by allowing the Plan to be locked into an unreasonable arrangement that required the Plan to include CREF Stock and use TIAA as the record-keeper, Defendants caused the Plan to engage in "prohibited transactions." (Doc. No. 38 at ¶ 235) To the extent that the alleged "prohibited transaction" in this Count is the single action of committing the Plan to be locked into an allegedly unreasonable arrangement with TIAA-CREF, that claim is time-barred and will be dismissed for the reasons set forth above.

Plaintiffs, however, also allege claims based upon Defendants' continued transactions with TIAA-CREF. (Doc. No. 38 at ¶ 235) Defendants argue that the "continuing violation" theory does not apply to prohibited transaction claims, which are based on discrete transactions. The Court agrees with those courts that hold that a decision to continue certain investments, or a defendant's failure to act, cannot constitute a "transaction" for purposes of the "prohibited transactions" in 29 U.S.C. § 1106. See e.g., David v. Alphin, 704 F.3d 327, 340 (4th Cir. 2013).The common understanding of the word "transaction" implies that an affirmative action is required. Id. at 340.[8] Unlike a claim for breach of fiduciary duty, which turns on the prudence of the decision-making process, a violation of the "prohibited transaction" statute occurs when a fiduciary takes a particular action with respect to a Plan. White v. Chevron Corp, 2017 WL 2352137 at * 22 (May 31, 2017)[9],

---

[8] Tibble v. Edison Int'l., 135 S.Ct. 1823 (2015) did not overrule David on this point. Tibble involved claims for breach of fiduciary duties, not claims of "prohibited transactions." A prohibited transaction claim is separate and distinct from a fiduciary duty claim. In re Honda, 661 F. Supp. 2d at 869. In Tibble, the Court held that a fiduciary had a continuing duty to review its investments and to remove imprudent ones. Tibble, 135 S.Ct. at 1828-29.

[9] The 2016 White case involved a motion to dismiss the Complaint. This 2017 White case came later and involved a motion to dismiss the Amended Complaint.

appeal filed June 9, 2017 (there is no such thing as a continuing prohibited transaction because the plain meaning of "transaction" is that it is a point-in-time event).

Accordingly, Defendants' Motion to Dismiss Count II will be granted, and Plaintiffs' allegations of "prohibited transactions," with regard to continuing certain investments rather than removing them and with regard to failing to act, will be dismissed.

COUNT IV

In Count IV, Plaintiffs allege that, in causing the Plan to use four record-keepers from year to year, Defendants caused the Plan to engage in "prohibited transactions." Plaintiffs assert that, as service providers to the Plan, the four record-keepers were "parties in interest," and the prohibited transactions occurred each time the Plan paid fees to these record-keepers.

Defendants again argue that this claim is time-barred. For the reasons set forth above, to the extent Plaintiffs are challenging the initial commitment of the Plan to the TIAA-CREF "arrangement" and resulting fees, that claim is time-barred, because that initial commitment occurred at the latest in 2009. Accordingly, any claim based upon the initial commitment with TIAA-CREF is barred by the statute of limitations.

When the initial decisions were made to engage the other three record-keepers (Fidelity, VALIC and Vanguard), however, is not clear from the Amended Complaint and, therefore, is a factual issue which cannot be determined on this Motion. Because those initial decisions could be considered "transactions," then if they were made within the six-year statute, the motion to dismiss those claims will be denied. If those initial decisions were made outside the six-year statute, then they, like the TIAA-CREF claim, will be time-barred.

For the reasons stated above, however, any claims for continuing violations with any of the record-keepers are not considered "transactions," and those claims will be dismissed. As explained above, a "transaction," for purposes of the prohibited transactions statute, is one affirmative act.

COUNT VI

Plaintiffs allege that, as providers of investment services, TIAA-CREF, VALIC, Fidelity and Vanguard are parties in interest and that, by including investment options managed by these four service-providers, Defendants caused the Plan to engage in prohibited transactions every time the Plan paid their investment fees. Plaintiffs' claims concerning the initial TIAA-CREF arrangement are barred by the six-year statute for the reasons stated above.

Again, to the extent that the Plan entered into initial agreements with the other three service-providers within the six-year statute, then claims related to those initial decisions are not time-barred. Any claims for continuing violations of the prohibited transaction statute, however, will be dismissed because they do not represent "transactions" under the statute, as explained above.

THREE-YEAR STATUTE OF LIMITATIONS

ERISA provides that claims must be brought within three years after the earliest date on which the plaintiff had actual knowledge of the breach. 29 U.S.C. § 1113. A plaintiff has "actual knowledge" of the breach or violation when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his duty or otherwise violated ERISA. Cunningham, 2017 WL 4358769 at * 12. The actual knowledge standard is strictly construed, and constructive knowledge will not suffice. Id.

The relevant knowledge required to trigger the statute of limitations under 29 U.S.C. § 1113(2) is knowledge of the facts or transactions that constituted the alleged violation; it is not

18

necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute. Wright v. Heyne, 349 F.3d 321, 330 (6th Cir. 2003). When beneficiaries claim the fiduciary made an imprudent investment, however, actual knowledge of the breach will usually require some knowledge of how the fiduciary selected the investment. Sulyma v. Intel Corp. Investment Policy Committee, 2017 WL 1217185 at * 5 (N.D. Cal. March 31, 2017); Tibble v. Edison Int'l, 729 F.3d 1110, 1120-21 (9th Cir. 2013), vacated on other grounds, 135 S. Ct. 1823 (2015).

Defendants contend that Plaintiffs had actual knowledge of any alleged breaches more than three years before filing this action through the annual fee disclosures made available to Plan participants beginning in 2012. Plaintiffs, on the other hand, argue that Defendants' disclosures did not inform Plaintiffs that they had been harmed by a failure to adequately monitor and manage Plan investments and fees. For example, Plaintiffs state that the information provided by Defendants failed to disclose anything about comparable fees or performance of comparable funds, anything about the percentage of fees going to revenue sharing, or anything about Defendants' failure to solicit competitive bids.

Plaintiffs allege that Defendants chose and maintained imprudent investments with excessive fees. The disclosure of fees alone does not reveal Defendants' selection process or the evaluation they undertook to choose those investments or to choose the record-keepers. It is possible that further development of the record will reveal that Plaintiffs had actual knowledge of these alleged breaches prior to August 10, 2013, but the Court cannot dismiss claims based on the three-year statute of limitations at this time. Therefore, Defendants' Motion as to this issue will be denied.

CONCLUSION

For all these reasons, Defendants' Motion to Dismiss (Doc. No. 42) will be granted in part and denied in part. Plaintiffs' claims for breach of the duty of loyalty (found in Count I) will be dismissed. All of Plaintiffs' claims with regard to the initial commitment ("locking in") with TIAA-CREF (found in Counts I, II, III, IV and VI) are barred by the applicable statute of limitations. The Court will also dismiss Plaintiffs' claim that having too many options was a breach of the fiduciary duty of prudence (found in Count V); Plaintiffs' claims for Failure to Monitor Fiduciaries (Count VII); and Plaintiffs' claims regarding "prohibited transactions" (Counts II, IV and VI), except as they relate to the Plan's initial agreements with VALIC, Fidelity and Vanguard, if those agreements were made within the six-year statute of limitations.

The remaining claims are Count I, only as it relates to maintaining imprudent investments; Count III; Count V, except the claim for having too many options; and Counts IV and VI, solely as they relate to the Plan's initial agreements with VALIC, Fidelity and Vanguard.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE