# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| LOREN L. CASSELL, et al. | ) | |
|---|---|---|
| Plaintiffs | ) | |
| v. | ) | NO. 3:16-cv-2086 |
| | ) | CHIEF JUDGE CRENSHAW |
| VANDERBILT UNIVERSITY, et al. | ) | |
| Defendants | ) | |

## MEMORANDUM OPINION

Pending before the Court is Plaintiffs' Motion for Class Certification (Doc. No. 93). Defendants have filed a response in opposition (Doc. No. 106), and Plaintiffs have filed a reply (Doc. No. 114).

## BACKGROUND

The Court has summarized the facts of this action in its prior Memorandum Opinion (Doc. No. 65) concerning Defendants' Motion to Dismiss. The case arises under the Employee Retirement Income Security Act ("ERISA") and alleges breach of fiduciary duties by Defendants in relation to the Vanderbilt University Retirement Plan and the Vanderbilt University New Faculty Plan (together, the "Plan"). Plaintiffs brought the action, pursuant to 29 U.S.C. § 1132(a)(2), on behalf of the Plan. The remaining claims are breach of fiduciary duties as they relate to maintaining imprudent investments; breach of fiduciary duties concerning unreasonable administrative fees; breach of fiduciary duties related to unreasonable investment management and other fees; and engaging in "prohibited transactions" related to the Plan's initial agreements with VALIC, Fidelity and Vanguard, if those agreements were made within the six-year statute of limitations (Doc. No. 65 at 20). The Second Amended Complaint adds two new Counts, for breach of fiduciary duties and

engaging in prohibited transactions by failing to protect vital and confidential participant information from being used by one of the Plan's record-keepers, TIAA, to aggressively market a variety of TIAA's financial products to Plan participants (Doc. No. 102).

Plaintiff seeks to certify a class of all participants and beneficiaries of the Plan, excluding Defendants, from August 10, 2010, through the date of any judgment in this case. Plaintiffs also move to be appointed class representatives and for their lawyers to be appointed as class counsel.

## ERISA

ERISA governs employee benefit plans and establishes both the obligations of plan fiduciaries and the remedies for any breaches of their duties. Tullis v. UMB Bank, 515 F.3d 673, 676 (6th Cir. 2008). ERISA provides that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations or duties imposed upon them under ERISA "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach" and for such other equitable remedial relief as the court deems appropriate. 29 U.S.C. § 1109(a).

ERISA permits civil actions to be brought by the Secretary of Labor or by a participant, beneficiary or fiduciary to seek appropriate relief on behalf of the plan. 29 U.S.C. § 1132(a)(2). Section 1132(a)(2) does not provide a remedy for individual injuries distinct from plan injuries. LaRue v. DeWolff, Boberg & Assocs., 128 S.Ct. 1020, 1026 (2008). A plaintiff who brings suit under Section 1132(a)(2) for breach of fiduciary duty does so in order to seek recovery on behalf of the plan. Soehnlen v. Fleet Owners Ins. Fund, 844 F.3d, 584 (6th Cir. 2016); Loren v. Blue Cross & Blue Shield of Mich., 505 F.3d 598, 608 (6th Cir. 2007). All relief under this section must go to

the benefit of the ERISA plan itself. Id.; see also 29 U.S.C. § 1109(a) (fiduciaries may be personally liable to make good *to such plan* any losses *to the plan)*.

STANDING

In order for the Court to have jurisdiction over Plaintiffs' claims, and before any decision on class certification can be made, the Court must determine whether Plaintiffs have constitutional standing to bring their claims. As Circuit Judge Sutton recently stated: "Article III standing is to federal courts as a ball is to soccer. If you have it, you can play. If you don't, you can just pretend." Vonderhaar v. Village of Evendale, Ohio, __ F.3d __, 2018 WL 4846376 at * 2 (6th Cir. Oct. 5, 2018).

A core tenet of Article III of the U.S. Constitution is that federal courts may adjudicate only actual, ongoing cases or controversies. Wilson v. Gordon, 822 F.3d 934, 941 (6th Cir. 2016). To invoke federal jurisdiction, a plaintiff must show a "personal stake" in the outcome of the action. United States v. Sanchez-Gomez, 138 S.Ct.1532, 1537 (2018). This requirement assures that the federal judiciary confines itself to its constitutionally-limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved. Id.

With regard to claims arising under ERISA, plaintiffs are not absolved from showing that the elements of Article III standing are met.[1] Soehnlen, 844 F.3d at 581. To satisfy Article III's standing requirements, a plaintiff must show: (1) he has suffered an injury-in-fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

---

[1] Plaintiffs also have to have statutory standing to bring a claim under ERISA. 29 U.S.C. § 1132(a)(2). Because Plaintiffs are participants and/or beneficiaries under the Plan, they meet that test.

3

speculative, that the injury will be redressed by a favorable decision. Id. For an injury to be "particularized," it must affect the plaintiff in a personal and individualized way. Id. For an injury to be "concrete," the injury must actually exist. Id. at 582.

Plaintiffs are not absolved of their individual obligations to satisfy the injury element of Article III just because they allege class claims. Soehnlen, 844 F.3d at 582. Potential class representatives must demonstrate individual standing vis-a-vis the defendant. They cannot acquire such standing merely by virtue of bringing a class action. Id. (citing Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 423 (6th Cir. 1998)).

Defendants contend that Plaintiffs cannot show injury-in-fact as a result of the alleged misconduct. Defendants argue that the named Plaintiffs did not invest in the majority of the funds challenged in this action and lack standing to assert claims related to funds in which they did not invest. Defendants claim that Plaintiffs have no evidence that they personally have been harmed, citing to portions of the Plaintiffs' depositions, in which many of them could not specifically identify how they had suffered losses or been harmed. The Court finds this argument unpersuasive in that these claims involve financial decisions concerning millions of dollars in assets of an entire Plan. It is understandable that Plaintiffs, who are not financial investment professionals or attorneys, might have difficulty answering specific questions about their claims. See, e.g., Moreno v. Deutsche Bank Americas Holding Corp., 2017 WL 3868803 at * 7 (S.D. N.Y. Sept. 5, 2017).

Courts have recognized that a plaintiff who is injured in his or her own plan assets - and thus has Article III standing - may proceed under Section 1132(a)(2) on behalf of the plan or other participants even if the relief sought sweeps beyond his own injury. Fallick, 164 F.3d at 423; Clark v. Duke Univ., 2018 WL 1801946 at * 4 (M.D. N.C. Apr. 13, 2018); Braden v. Wal-Mart Stores,

4

Inc., 588 F.3d 585, 593 (8th Cir. 2009) (plaintiff may seek relief under Section 1132(a)(2) "that sweeps beyond his own injury"). Once an individual has alleged a distinct and palpable injury to himself, he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants. Fallick, 164 F.3d at 423. Once his standing has been established, then whether a plaintiff will be able to represent the putative class depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure. Id.

Plaintiffs' allegations concerning record-keeping and administrative fees challenge the practices of Defendants, not specific funds. Plaintiff assert, for example, that Defendants chose to use four record-keepers instead of one, a practice that resulted in excessive, unreasonable record-keeping fees. Plaintiffs allege that Defendants also failed to use the size of the Plan to leverage lower, reasonable fees. Plaintiffs contend that Defendants failed to solicit competitive bids for record-keepers and failed adequately to monitor revenue sharing. These are allegations of an imprudent process that allegedly injured all Plan participants, including Plaintiffs, when a portion of those fees were charged to individual accounts. Plaintiffs have standing to bring these claims related to administrative, management and record-keeping fees.[2]

Plaintiffs allege that Defendants failed independently to evaluate investment options and adequately to monitor those investments, resulting in injuries to the Plan. The named Plaintiffs were invested in only some of those allegedly imprudent funds. To the extent this allegedly imprudent practice of Defendants resulted in investment in allegedly imprudent funds, participants in those funds were injured. For example, Plaintiffs contend that by continuing to allow TIAA-CREF to

---

[2] If the plaintiffs are successful, any assets recovered from Defendants would first be paid into the Plan and then allocated to Plaintiffs' individual accounts as appropriate. Tullis v. UMB Bank, 515 F.3d 673, 680 (6th Cir. 2008).

5

mandate the inclusion of TIAA and CREF accounts in the Plan, Defendants continued to maintain imprudent investments. At least two Plaintiffs were invested in TIAA-CREF stocks. Plaintiffs challenge the practice by which investments were chosen and monitored.

Courts have recognized that the standing-related provisions of ERISA were not intended to limit a claimant's right to proceed under Rule 23 on behalf of all individuals affected by the challenged conduct, regardless of the representative's lack of participation in all the ERISA-governed plans involved. Fallick, 162 F.3d 410 at 423; Tullis, 515 F.3d at 681 (plaintiffs could seek money damages on behalf of the plan, notwithstanding the fact that the alleged fiduciary violations affected only a subset of the plan's participants); In re Schering-Plough Corp. ERISA Litig., 420 F.3d 231, 232 (3d Cir. 2005) (same). Plaintiffs have standing to pursue this claim for imprudent practices.[3]

In the new sections of the Second Amended Complaint, Plaintiffs allege that Defendants breached their fiduciary duties and engaged in prohibited transactions by failing to protect vital and confidential participant information from being used by one of the Plan's record-keepers, TIAA, to aggressively market a variety of TIAA's financial products to Plan participants. According to Defendants, Plaintiffs Rice and Crago had investments with TIAA (Doc. No. 106 at 6-7). To the extent they were affected by the alleged aggressive marketing, they have standing to pursue this claim.[4]

---

[3] Defendants do not claim that any of the named Plaintiffs were invested in *none* of the allegedly imprudent funds.

[4] Should the Court need to create a subclass for those persons who invested in TIAA, for purposes of this claim, that matter can be considered at a later time.

Plaintiffs' remaining claims concerning "prohibited transactions" relate solely to the initial decisions to engage Fidelity, VALIC and Vanguard as record-keepers *if* those initial decisions were made within the six-year statute of limitations.[5] Counts IV and VI in the Second Amended Complaint are not limited, as the Court ordered, to the Plan's initial agreements with VALIC, Fidelity and Vanguard and do not indicate whether those initial agreements occurred within the six-year statute of limitations. To the extent the Second Amended Complaint re-alleges claims that were previously dismissed, those claims cannot be considered. To the extent the Second Amended Complaint alleges initial agreements that occurred within the six-year statute of limitations, which is not clear, Plaintiffs would have standing to assert those claims to the extent they invested in VALIC, Fidelity and Vanguard stocks.

Plaintiffs have satisfied the requirements of Article III because they have alleged actual injury to their own Plan accounts, fairly traceable to Defendants' conduct, a causal connection between Defendants' actions and Plaintiffs' losses, and the likelihood that their injuries will be redressed by a favorable judgment. Plaintiffs have standing to pursue these claims. Whether Plaintiffs will be able to represent the proposed class is a different question, dependent solely on Fed. R. Civ. P. 23.

CLASS CERTIFICATION

In order to certify a class, the Court must be satisfied that Plaintiffs have met the requirements of both Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure. Rule 23(a) establishes four requirements for class certification: (1) the class is so numerous that joinder of all

---

[5] The Court dismissed Plaintiffs' claims regarding "prohibited transactions" except as they relate to the Plan's initial agreements with VALIC, Fidelity and Vanguard if they were made within the six-year statute of limitations. See Court's Order at Doc. No. 65.

members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

A class action will be certified only if, after rigorous analysis, the Court is satisfied that the prerequisites of Rule 23(a) have been met and that the action falls within one of the categories under Rule 23(b). Castillo v. Envoy Corp., 206 F.R.D. 464, 467-68 (M.D. Tenn. 2002); Burges v. Bancorpsouth, Inc., 2017 WL 2772122 at * 2 (M.D. Tenn. June 26, 2017). The decision whether to certify a class, committed to the sound discretion of the district judge, turns on the particular facts and circumstances of each individual case. In re Whirlpool Corp. Front-Loading Washers Product Liability Litig., 722 F.3d 838, 850 (6th Cir. 2013). The parties seeking class certification bear the burden of showing that the requirements for class certification are met. Bridging Communities Inc. v. Top Flite Financial Inc., 843 F.3d 1119, 1124 (6th Cir. 2016); Skeete v. RePublic Schools Nashville, 2017 WL 2989189 at * 2 (M.D. Tenn. Mar. 21, 2017).

To satisfy the numerosity requirement, Plaintiffs must show that the numerosity of injured persons makes joinder of all class members impracticable. Fed. R. Civ. P. 23(a)(1). It appears undisputed that Plan participants in this case number more than 40,000, certainly enough to meet this numerosity requirement.

The second requirement for class certification is that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). To demonstrate commonality, Plaintiffs must show that class members have suffered the same injury. Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011). What matters to the commonality requirement of class certification is the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.

Id.; see also Davis v. Cintas Corp., 717 F.3d 476, 485 (6th Cir. 2013) (same). Here, the questions of law and fact regarding Defendants' conduct are common to all potential class members. Particularly where, as here, the named Plaintiffs bring the action on behalf of the Plan, common answers are apt to drive the resolution of this litigation.[6] Defendants do not assert otherwise. The fiduciary duties at issue were duties to the Plan; any breach of those duties would affect the Plan, its participants and its beneficiaries.

A plaintiff's claim is typical if it arises from the same event, practice, or course of action that gives rise to the claims of other class members or if it is based on the same legal theory. Ross v. Abercrombie & Fitch Co., 257 F.R.D. 435, 443 (S.D. Ohio 2009). The commonality and typicality requirements are closely related because they both help determine whether the claims of the named plaintiffs and those of the class are so interrelated that the interests of the absent class members will be protected. Id. at 444. As with commonality, the named Plaintiffs' claims arise from the same alleged misconduct by Defendants as the potential class members and are based upon the same legal theories concerning alleged breaches of fiduciary duties and possible prohibited transactions.

Defendants challenge Plaintiffs' ability to meet the requirement of Fed. R. Civ. P. 23(a)(4) - that they fairly and adequately protect the interests of the class. This requirement serves to uncover conflicts of interest between named parties and the class they seek to represent, as well as competency and conflicts of class counsel. Sims v. BB&T Corp., 2017 WL 3730552 at * 5 (M.D. N.C. Aug. 28, 2017) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 and n. 20 (1997)).

---

[6] Common questions include whether Defendants were fiduciaries, whether Defendants breached their fiduciary duties, and, if so, what losses resulted to the Plan.

A court may deny class certification when class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys. Ross, 257 F.R.D. at 451. However, it is well established that a named plaintiff's lack of knowledge and understanding of the case is insufficient to deny class certification unless his ignorance unduly impacts his ability to vigorously prosecute the action. City of Goodlettsville v. Priceline.Com, Inc., 267 F.R.D. 523, 531 (M.D. Tenn. 2010). The burden in demonstrating that the class representative meets this standard is not difficult. Id.

Plaintiffs have expressed their willingness to prosecute this case by filing suit and beginning the litigation process through initial disclosures, responding to a Motion to Dismiss and participating in case management. The First Amended Case Management Order (Doc. No. 72) was entered on February 8, 2018, and discovery has been proceeding since then. See e.g., Doc. Nos. 110, 116 and 119. All Plaintiffs have been deposed, and all Plaintiffs have filed Declarations in support of this Motion for Class Certification (Doc. Nos. 94-1 - 94-6). Moreover, Plaintiffs' counsel have shown themselves to be willing and able to vigorously represent the interests of their clients. See Snead v. CoreCivic of Tenn., LLC, 2018 WL 31157283 at * 11 (M.D. Tenn. June 27, 2018).

As for Plaintiffs' understanding of the case, "the complex nature of ERISA fiduciary breach claims requires investors to rely on their attorneys and hired experts, and such reliance does not make the plaintiffs inadequate representatives." Sims, 2017 WL 3730552 at * 5. In a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative.

10

Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 430 (4th Cir. 2003) (cited in Clark, 2017 WL 1801946 at * 9 and in In re Vitamin C Antitrust Litig., 279 F.R.D. 90, 106-07 (E.D. N.Y. 2012)).

The Court finds that Plaintiffs are adequate representatives in this case. Their lack of specific knowledge about this complex case does not bar class certification. Accordingly, Plaintiffs Loren L. Cassell, Pamela M. Steele, John E. Rice, Penelope A. Adgent, Dawn E. Crago and Lynda Payne will be appointed class representatives in this action.

In addition, Plaintiffs' counsel, Schlichter, Board & Denton LLP, are qualified and experienced in ERISA fiduciary duty cases and will be appointed as class counsel.

## CONCLUSION

For all these reasons, Plaintiffs' Motion for Class Certification (Doc. No. 93) will be granted. The Court will certify a class of all participants and beneficiaries of the Plan, excluding Defendants, from August 10, 2010, through the date of any judgment in this case.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE