**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE**

LOREN L. CASSEL, et al.,

      Plaintiffs,

v.

      Case No. 3:16-CV-02086

VANDERBILT UNIVERSITY, et al.,

      Defendants.

_____

## OBJECTION TO THE PROPOSED CLASS SETTLEMENT, AND NOTICE OF INTENTION TO APPEAR

Objector Michael B. Bressman is a Professor of the Practice of Law at Vanderbilt Law School. Professor Bressman has continuously participated in the Vanderbilt University Retirement Plan since 2005, and as such is a member of the Class. Professor Bressman objects to the scope of the proposed release of claims included in the proposed Class Action Settlement Agreement ("Settlement Agreement" or "SA"). This objection applies to the entire Class. Professor Bressman's direct contact information is:

      Vanderbilt Law School
      131 21st Avenue South
      Nashville, TN 37203
      (615) 322-4964

## INTRODUCTION

Class action settlements typically include a release of potential claims against the settling defendants. Those releases will often extend to the defendants' officers, affiliates and even insurers who are paying some or all of the settlement proceeds. There are nevertheless limits on the scope of a Class release. Limitations on the scope of a Class release are imposed by basic requirements of due process. In addition, because the claims at issue in this case involve

retirement plans, any proposed release of Class claims must comply with ERISA.[1] The proposed Release contained in the proposed would have the effect of releasing valuable claims against non-parties to the lawsuit – the third-party service providers TIAA-CREF, Fidelity, VALIC, and Vanguard – who owe fiduciary and other legal obligations to the Plan and its participants under ERISA without consideration being paid by those non-parties. As a result, the "Release" proposed here fails both on grounds of due process and because it does not comply with ERISA. Professor Bressman does not object to the remaining terms of the Settlement Agreement. For the reasons detailed below, however, the Court should not approve the Settlement Agreement unless the parties revise the scope of the Release.

## I.    The Litigation

Plaintiffs, individually and as representatives of a class of participants and beneficiaries of the Vanderbilt University Retirement Plan and the Vanderbilt University New Faculty Plan (collectively the "Plan"), sued Vanderbilt University, the Plan's Oversight Committee, and several individuals (collectively, "Defendants"). Plaintiffs did not sue the investment service providers, TIAA-CREF, Fidelity, VALIC, or Vanguard. Plaintiffs alleged that, because of its size, the Plan had tremendous bargaining power in dealing with the Plan's investment service providers "to demand low-cost administrative and investment management services." Further, the Plaintiffs alleged that Defendants were fiduciaries of the Plan and breached their fiduciary obligations "by allowing the Plan's conflicted third-party service providers" to charge the Plan excessive fees.[2] Plaintiffs alleged that Defendants improperly allowed the Plan to invest "in excessive-cost investment options, including . . . higher-cost share classes of mutual funds priced for small investors when far lower-cost but otherwise identical share classes of the same mutual

---

[1]     The Employee Retirement Income Security Act, 29 U.S.C. §§1001–1461.
[2]     *See* Second Amended Complaint ("Complaint"), ¶¶ 3-4.

2

funds were available to the Plan because of its enormous size."[3] Plaintiffs alleged that the Plan's various recordkeepers and investment service providers "have an incentive to maximize their fees by putting their own higher-cost" mutual funds and other investment vehicles into retirement plans.[4] Further, Defendants "select[ed] and continu[ed] to offer far higher-cost share classes even though lower-cost share classes of the *exact same mutual funds* were available."[5] The Defendants sued in the Litigation consist only of the Vanderbilt fiduciaries, none of the Plan's recordkeepers or investment service providers were sued.

## II.     The Scope of the Proposed Release of Class Claims

The terms of the proposed Release are described in two paragraphs of the Settlement Agreement ("SA"). The "Released Parties" are described in six sub-paragraphs of Section 2.35 of the SA, which provides in relevant part:

> **"Released Parties"** means (a) [the named defendants], (b) their insurers . . ., (c) their . . . parent corporation(s), (d) their . . . affiliates . . ., (e) their . . . boards of trustees, agents, officers . . ., *service providers to the Plan* . . . and *all persons acting under, by, through, or in concert with any of them*, and (f) . . . *recordkeepers*, service providers, consultants*, and parties-in-interest*.

SA Art. 2.35 (emphasis added). The broad description of proposed Released Parties in Article 2.35(a) – (e), therefore, includes the named defendants, their insurers, affiliates, other related entities, board members, and others employed by the defendants. The remaining provisions of Article 2.35(e) and Article 2.35(f), however, extend the list of proposed released parties far beyond the defendants or agents traditionally included in litigation releases. Significantly, although none of the Plan's recordkeepers and investment service providers were sued, Article 2.35(e) proposes to extend the release to unnamed (presumably, all) "service providers to the Plan

---

3     *See id.*, ¶ 8 c.
4     *See id.*, ¶ 44.
5     *See id.*, ¶ 176; *see also* discussion at *id.*, ¶¶ 169 - 179.

3

(including their owners and employees)." Similarly, Article 2.35(f) adds unnamed (again, presumably, all) "recordkeepers, consultants, and parties-in-interest."

The list of proposed "Released Claims," is set out in Article 2.36 which provides in relevant part:

> "**Released Claims**" means any and all actual or potential claims . . . whether **known or unknown** . . . during the Class Period:
>
> a.      That were asserted in the Litigation or that arise out of, relate to . . . any of the allegations, acts, omissions, facts . . . in the Second Amended Complaint or in any complaint previously filed in the Litigation; or
>
> b.      That arise out of, *relate in any way to*, are based on, *or have any connection with*: (1) . . . *the Plan's* investment options or *service providers*, (2) *fees, costs, or expenses charged to* . . . *the Plan* or any Class Member, (3) disclosures . . ., (5) the *compensation received by the Plan's service providers* . . ., (7) the *services provided to the Plan or the costs of those services*, . . . or (10) *alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties or prohibited transactions*; or
>
> c.      That would be barred by res judicata based on entry of the Final Order[.]

SA Art. 2.36 (emphasis added).[6] The Release terms would then be put into effect through the provisions of Article 8 of the Settlement Agreement. *See* SA, Art. 8.1 (Plan and Class Members "shall be deemed to have fully, finally, and forever settled, released, relinquished, waived, and discharged all Released Parties from the Released Claims"); *id.* at Art. 8.2 (Plan and Class

---

[6]      Other provisions of Art. 2.36 (emphasis added) provide that Released Claims include those:

> d.      That relate to . . . the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund to the Plan or any Class Member in accordance with the Plan of Allocation; or
> e.      That relate to the approval by the Independent Fiduciary of the Settlement Agreement, unless brought against the Independent Fiduciary alone.

Released Claims specifically exclude (1) those claims not related to 2.36(a) - (e) above; (2) claims of individual denial of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) *that do not fall within any of the categories identified in 2.36(a) - (e) above*; (3) labor or employment claims unrelated to the Plan . . .; and (4) claims arising exclusively from conduct outside the Class Period.

Members shall not sue or seek to maintain any cause of action "connected with, or arising out of any of the Released Claims."); *see also* Proposed Final Judgment, ¶¶ 9 – 11.

Thus, even though TIAA-CREF, Fidelity, VALIC, and Vanguard were not sued and presumably did not contribute to the proposed settlement, the proposed Release would release them from any claims and damages for their conduct and behavior. Such a result would forever foreclose to Class members a potential source of recovery for the harms they have suffered. Thus, this provision makes the proposed settlement unfair, unreasonable, and inadequate.

### III. The Proposed Release Would Violate ERISA

The extremely broad description of Released Claims in Article 2.36(b) is coupled with the proposed release of all "service providers to the Plan . . . recordkeepers, . . . and parties-in-interest" in Article 2.35(e) and (f). The effect of these provisions taken together is a proposed release of any conceivable claim against any conceivable party in interest, including TIAA-CREF, Fidelity, VALIC, and Vanguard.[7] The proposed Release, however, would constitute a "prohibited transaction" in violation of ERISA. Section 406 of ERISA, 29 U.S.C 1106(a) provides in relevant part that:

> **(1)** A fiduciary with respect to a plan *shall not cause the plan to engage in a transaction*, if he knows or should know that *such transaction constitutes a direct or indirect*—
>
> > **(A)** *sale or exchange*, or leasing, *of any property between the plan and a party in interest*;

29 U.S.C.A. § 1106 (a)(1) (emphasis added). The proposed Release would cause a sale or exchange of property, a potential chose in action, between the Plan and the unnamed service

---

[7]     ERISA defines "party in interest" to include, "as to an employee benefit plan--
**(A)** *any fiduciary* . . . such employee benefit plan; **(B)** a *person providing services to such plan*."
29 U.S.C.A. § 1002(14)(A) – (B) (emphasis added).

5

providers and other parties in interest that would be released.[8]  Therefore, the proposed Release would violate Section 406(a), 29 U.S.C. § 1106 (a)(1).

The Department of Labor ("DOL") is authorized by Section 408(a) of ERISA, 29 U.S.C 1108(a), to establish, and has established, exemptions from certain transactions prohibited by section 1106.  The only DOL exemption that could potentially apply to the proposed Release, however, cannot authorize the Release contemplated here.  Where specified conditions are met, the DOL has authorized an exemption to Section 406(a) for transactions that involve:

> (a) The *release by the plan* or a plan fiduciary *of a legal or equitable claim against* a *party in interest* <u>*in exchange for consideration, given by,*</u> *or on behalf of,* <u>*a party in interest* to the plan</u> in partial or complete settlement of the plan's or the fiduciary's claim.

*See* Prohibited Transaction Exemption 2003–39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830 ("PTE 2003–39").  Even without considering whether the proposed Release could otherwise meet the conditions required before the exemption in PTE 2003-39 would apply,[9] the proposed Release cannot qualify for the exemption because no consideration has been "given by, or on behalf of," the unnamed service providers, recordkeepers, and other unnamed parties in interest, "to the plan."[10]  To the contrary, as set out in the Order preliminarily approving the

---

[8]      *See* Prohibited Transaction Exemption 2003–39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830, at 33831 ("[T]he *release by the plan of a legal or equitable claim against a party in interest* in exchange for consideration is an exchange of property (a chose in action) between the plan and the party in interest which *is prohibited under section 406(a)(1)(A) of the Act in the absence of an exemption*.") (emphasis added); *see also* DOL Advisory Opinion 95–26A, at 2 (October 17, 1995) ("where any of the defendants are still parties in interest with respect to any of the Plans, *the settlement of the lawsuit would be an exchange of property (a chose in action) between such Plans and parties in interest* as described in section 406(a)(1)(A)") (emphasis added).

[9]      *See* PTE 2003–39 at 75 Fed. Reg. 33836 – 37 (describing required conditions, including that the settlement be authorized by an independent fiduciary).

[10]      Significantly, the DOL has expressly indicated a concern with "unreasonably broad" releases.  *See* PTE 2003–39 at 75 Fed. Reg. 33832 ("[I]n assessing the reasonableness of any settlement, the *authorizing fiduciary must consider* the entire settlement. This includes *the scope of the release of claims*. . . . [A]ttorneys for the Department have reviewed numerous releases in class-action litigation involving employee benefit plans. Some of these releases were unreasonably broad. . . . [T]he *role of the authorizing fiduciary includes a careful review of the* <u>*scope*</u> *of any release* that will eliminate the claims of the plan or the plan fiduciaries. In some

6

Settlement [D.E. 153], the proposed settlement proceeds, which is the only consideration identified by the settling parties, will be paid entirely by the Vanderbilt Defendants or their insurer. *See* Order at 4, ¶ 3 B; *id.* at 5, ¶ 3 G; *see also id.* at 15 – 16, ¶ 11; SA Art. 5.4 – 5.5; *id.* Art. 11.2. The settling parties are required to identify "any agreement made in connection with" the proposed settlement. *See* Fed. R. Civ. P. 23(e)(3).[11] Because the parties have not identified any other agreement or consideration paid by any of the unnamed service providers, recordkeepers, and parties in interest that would benefit from the proposed Release, the release of those unnamed entities constitutes a prohibited transaction barred by ERISA, which is not subject to any exemption. The Settlement Agreement should not be approved unless and until claims against the unnamed parties in interest are removed from the scope of the proposed Release.

### IV.      The Proposed Release Would Violate Due Process

In addition to its violation of ERISA, the scope of the proposed Release is so broad that it would also violate due process protections enforced by courts upon class action lawsuit settlements. In considering whether a release proposed in connection with a class settlement should be approved, courts apply what has been termed the "identical factual predicate doctrine." *See Does 1-2 v. Deja Vu Services, Inc.*, 925 F.3d 886, 900 (6th Cir. 2019*)*. The Sixth Circuit Court of Appeals has explained that:

> The question is not whether the definition of the claim in the complaint and the definition of the claim in the release overlap perfectly; it is whether the released claims share a "factual predicate" with "the claims pled in the complaint."

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) (citations omitted). Applying this rule in its recent decision in *Deja Vu Services*, the court described the release at issue there as providing for release of:

> 'all *Claims asserted in the Action*, . . . and *any and all Claims* of any conceivable kind or nature whatsoever that are **based on such pleadings or that are reasonably related thereto** . . ..'

---

instances, *it may be necessary for the authorizing fiduciary to raise objections with the court, for example, requesting that the court narrow the scope of the release*.") (emphasis added).

[11]      *See also* PTE 2003–39 at 75 Fed. Reg. 33836, Condition II(h) (requiring that "All terms of the settlement are specifically described in a written settlement agreement").

*Deja Vu Services*, 925 F.3d at 900 (emphasis added). The court rejected the objectors' argument that the release proposed there would cover claims "completely **unrelated** to the lawsuit," explaining:

> The Objectors claim that a class release of this breadth cannot satisfy the 'identical factual predicate doctrine' outlined by the Second Circuit in *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, which limits class releases to 'claims that share the same integral facts as settled claims, provided that the released claims are adequately represented prior to settlement.' 396 F.3d 96, 106 (2d Cir. 2005). . . .
>
> **The claims released in the Settlement Agreement share that factual predicate**, as the **release specifically cabins the categories of relinquished claims to** *those "based upon"* or "*reasonably related*" *to the* **pleadings and claims asserted** in the Settlement Agreement.

*Deja Vu Services*, 925 F.3d at 900 (emphasis added).

In contrast to the class release approved in *Deja Vu Services*, here the proposed Release is expressly designed to extend far beyond claims "based upon" or "reasonably related" to the pleadings. Specifically, while Art. 2.36(d) reaches claims related to the pleadings, Art. 2.36(e) goes far beyond and would extend the proposed Release to include claims:

> e. That arise out of, *relate in any way to*, are based on, *or have* <ins>*any connection with*</ins>: (1) . . . *the Plan's* investment options or *service providers*, (2) *fees, costs, or expenses charged to* . . . *the Plan* or any Class Member . . ., (5) the *compensation received by* the Plan's *service providers* . . ., (7) the *services provided to the Plan or the costs of those services*, . . . or (10) <ins>*alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties or prohibited transactions*</ins>;

SA Art. 2.36(e) (emphasis added). Rather than being reasonably related to any claim asserted in the Litigation, the proposed Release is expressly tailored to release claims available to the Plan against the unnamed non-party service providers and other unnamed parties in interest, although none of those entities have provided consideration to the Plan for any release. In other words, TIAA-CREF, Fidelity, VALIC, and Vanguard would be released from claims and lawsuits even though they were not sued by the Plaintiffs, nor, according to the Settlement Agreement, did they contribute to the settlement. The gratuitous release of non-party service providers that have caused substantial losses to the Plan is unnecessary and contrary to law. For this further reason, the Settlement Agreement should not be approved unless and until claims against service

8

providers and other unnamed parties in interest are removed from the scope of the proposed Release.

### V. Professor Bressman is Prepared to Bring Suit Against Service Providers on Behalf of the Plan

The objections asserted here are not theoretical. Under ERISA, service providers that saddled the Plan with higher-cost share classes of mutual funds when lower-cost but otherwise identical share classes of the same mutual funds were available to the Plan may be liable both for damages to the Plan as well as for disgorgement of profits. To the extent that any of the service providers exercised "any authority or control respecting management or disposition of" Plan assets, they are functional fiduciaries under ERISA. *See* 29 U.S.C § 1002(21)(A)(i); *Briscoe v. Fine*, 444 F.3d 478, 490-91 (6th Cir. 2006) (noting the lower "threshold for acquiring fiduciary responsibilities . . . for persons or entities responsible for the handling of plan assets than for those who manage the plan."). As such, they are liable to the Plan for damages and profit disgorgement. *See* 29 U.S.C. § 1109(a) (any person who breaches ERISA fiduciary obligations "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary,"); *see also Leigh v. Engle,* 727 F.2d 113, 139 (7th Cir. 1984) ("the disgorgement requirements of §1109(a) are intended to promote [the interests of ERISA plan beneficiaries] by *removing the fiduciary's incentives to misuse trust assets.*") (emphasis added); *Mertens v. Hewitt Assoc's.*, 508 U.S. 248, 262 (1993) (ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan, *see* 29 U.S.C. § 1002(21)(A), thus expanding the universe of persons subject to fiduciary duties—and to damages—under § 409(a)"). Such claims would

9

be based exclusively on the obligations owed to the Plan by the service providers themselves.[12]

Professor Bressman stands ready to assert those claims on behalf of a class of Plan members, but would be prohibited from doing so by the proposed Release. These valuable claims should not be gratuitously discarded.

Respectfully submitted,

Michael B. Bressman

---

[12]    Because the obligations are personal to the service providers, there would be no basis for the assertion of claims for indemnification or contribution against the Vanderbilt Plan fiduciaries, even in the unlikely event that such claims would otherwise be recognized under ERISA. *See Computer & Eng'g Services, Inc. v. Blue Cross & Blue Shield of Michigan*, 2015 WL 4207150, at *2 (E.D. Mich. July 10, 2015) ("Although the Sixth Circuit has acknowledged the circuit split, it has not adopted a position. However, to this Court's knowledge, every one of the numerous district courts within the Sixth Circuit to have addressed the issue . . . has sided with the Eighth and Ninth Circuit view rejecting a right of contribution among ERISA co-fiduciaries. This Court adopts the view of the other district courts in this circuit. Therefore, BCBSM's contribution claim is not a viable legal theory and Plaintiffs' motion to dismiss BCBSM's counterclaims must be granted.") (citations omitted).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 23, 2019, the foregoing document was sent to: Sari M. Alamuddin (sari.alamuddin@morganlewis.com) and Allison N. Powers (allison.powers@morganlewis.com), Morgan, Lewis & Bockius (Chicago Office), 77 W Wacker Drive, 5th Floor, Chicago, IL 60601 - (312) 324-1000 - (312) 324-1001 (fax); Mara E. Slakas Brown (mara.slakasbrown@morganlewis.com) and Jeremy P. Blumenfeld (jeremy.blumenfeld@morganlewis.com), Morgan, Lewis & Bockius (Philadelphia Office), 1701 Market Street, Philadelphia, PA 19103 - (215) 963-5000 - (215) 963-5001 (fax); Abbey M. Glenn (abbey.glenn@morganlewis.com), Morgan, Lewis & Bockius (DC Office), 1111 Pennsylvania Avenue, NW, Washington, DC 20004 - (202) 739-3000 - (202) 739-3001 (fax); Eric Geoffrey Evans (eevans@hawkinshogan.com) and William B. Hawkins, III (whawkins@hawkinshogan.com), Hawkins Hogan, PLC, 205 17th Avenue North, Suite 202, Nashville, TN 37203 - (615) 726-0050 - (615) 726-5177 (fax); Alexander L. Braitberg (abraitberg@uselaws.com), Scott A. Bumb (sbumb@uselaws.com), Troy A. Doles (tdoles@uselaws.com), Heather Lea (hlea@uselaws.com), Andrew D. Schlichter (aschlichter@uselaws.com), Jerome J. Schlichter (jschlichter@uselaws.com), Michael A. Wolff (mwolff@uselaws.com), Schlichter Bogard & Denton, LLP, 100 S 4th Street, Suite 1200, St. Louis, MO 63102 - (314) 621-6115 - (314) 621-5934 (fax); Anthony Joel McFarland (amcfarland@bassberry.com), Bass, Berry & Sims (Nashville Office), 150 Third Avenue South, Suite 2800, Nashville, TN 37201 - (615) 742-6200.

Michael B. Bressman